IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MELVIN HARRIS,

           Petitioner,

vs.                          Case No. 10-3181-SAC

RAY ROBERTS, WARDEN,
EL DORADO CORRECTIONAL FACILITY; and
DEREK SCHMIDT, KANSAS ATTORNEY
GENERAL,

           Respondents.

**MEMORANDUM AND ORDER**

This case comes before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, a prisoner at the El Dorado Correctional Facility, proceeds pro se, so the court liberally construes his pleadings. *See Federal Exp. Corp. v. Holowecki,* 552 U.S. 389, 402 (2008). Petitioner claims: (1) he was denied a fair trial due to cumulative judicial errors; (2) his sentence violates the Eighth and Fourteenth Amendments of the U.S. Constitution; (3) his prior convictions were improperly considered in violation of *Apprendi v. New Jersey*; and (4) he was denied his right under the Sixth and Fourteenth Amendments to effective assistance of trial counsel. The Court notes its appreciation for Petitioner's well-organized, factually-accurate, and clearly-written memoranda, as well as for the specificity of his claims.

**Procedural Background**

Petitioner was found guilty of second degree murder in violation of K.S.A. 21-3402, forgery in violation of 21-3710, criminal possession of a firearm in violation of K.S.A. 21-4204, and theft in violation of K.S.A. 21-3701. After Petitioner's conviction was affirmed by the Kansas Court of Appeals, *State v. Harris*, 130 P.3d 1247, 2006 WL 851228 (No. 91,321) (2006), (Harris I), the Kansas Supreme Court denied discretionary review. Petitioner filed a state habeas petition pursuant to K.S.A. 60-1507, but the District Court of Wyandotte County denied it, and the Kansas Court of Appeals affirmed that denial. *Harris v. State*, 223 P.3d 837, 2010 WL 597000 (Kan. Ct. App. 2010) (unpublished opinion), (Harris II). The Kansas Supreme Court thereafter denied discretionary review. No claim of lack of exhaustion is made, and Petitioner's current petition is timely.

**Underlying Facts**

This court must presume that the state court's factual findings are correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz,* 392 F.3d 1166, 1175 (10th Cir. 2004), *cert. denied,* 545 U.S. 1146 (2005). Petitioner has not rebutted by clear and convincing evidence the factual findings which the Kansas Supreme Court set forth in its opinion. Accordingly, the Court incorporates its factual statement, which follows:

> On the night of January 19, 2002, police found the body of Shane Knudtson in an alley in Kansas City, Kansas, with seven

gunshot wounds to the head, shoulder, and chest. Police observed that a trail of blood ran uphill from the body, indicating the body had been dragged downhill for a short distance. They also observed broken glass on and around the body, as well as car tire impressions in the snow nearby. The tire impressions were later determined to match the tires on Knudtson's car. Knudtson's residence was also burglarized later that night.

Police were on the lookout for the victim's car, a Dodge Stratus with a missing driver's side window, and spotted it the next day at a fast food restaurant. An officer saw Harris standing inside the restaurant and spoke with him, but he denied that he was driving the vehicle. Police towed the victim's car and collected blood swabs from the numerous spots on the inside of the car, as well as glass, fingerprints, a bullet from the driver's side door, and a CD case which contained a CD with "Melvin H" written on it. The fingerprints were later determined to match Harris' prints.

Police had no suspects in the case until Harris was arrested 4 days later trying to cash one of Knudtson's checks, which was made out to himself in the amount of $672. After his arrest, Harris was taken to the police station around 12:40 p.m. He waived his *Miranda* rights and agreed to talk with police about the forged check. After changing his story three times, he ultimately admitted shooting Knudtson two to three times in the head and upper body with a .357 he had borrowed from Brown.

Police took a photograph of a shoe print in the snow outside Knudtson's residence which was later determined to match the shoes Harris was wearing that night. The victim's DNA was also recovered from blood found on Harris' shoe and from bloody towels found in a wastebasket in Harris' girlfriend's home. Telephone records from Harris' and Knudtson's phones showed numerous calls between the victim and Harris on the evening of the murder.

Harris was originally charged with one count each of first-degree premeditated murder, felony theft of Knudtson's car, and forgery. The State filed a motion to determine the voluntariness of Harris' statements to police, and the court conducted an evidentiary hearing and determined the statements were not coerced. The first trial ended in a mistrial when a juror was found to be sleeping through the evidence. Approximately 1 month before the rescheduled trial, the State moved to amend the information to add the charge of criminal possession of a firearm. After a hearing, the trial court granted the State's motion and set a preliminary hearing on the new charge.

A jury acquitted Harris of first-degree premeditated murder, but found him guilty of a lesser included offense of second-degree intentional murder and of the three other counts. The trial court

denied Harris' motion for a durational departure and sentenced him to a controlling sentence of 620 months in prison.

*Harris I*, 130 P.3d 1247, at 1-2.

**AEDPA standard**

A federal court does not sit as a super state appellate court. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991). It does not stand to correct errors of state law and is bound by a state court's interpretation of its own law. *Id.* Thus, this Court can grant relief only for a violation of federal law. *See Wilson v. Corcoran,* 562 U.S. ___, 131 S.Ct. 13 (Nov. 8, 2010).

A petitioner's propositions of error, as raised by appellate counsel on direct appeal and adjudicated on the merits by the Kansas Supreme Court, are subject to review under the deferential standards of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (1996). *See Turrentine v. Mullin,* 390 F.3d 1181, 1188 (10th Cir. 2004), *cert. denied,* 545 U.S. 1106 (2005). "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross,* 565 U.S. ___, 132 S.Ct. 490, 495 (2011). This Court can grant federal habeas relief only if an applicant establishes that the state court "decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or … was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "The absence of clearly established federal law is dispositive under § 2254(d)(1)."

4

*House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson,* 562 U.S. ___, ___, 131 S.Ct. 1305 (2011) (*per curiam*) (slip op., at 4) (internal quotation marks omitted).

### I. Jury Instructions

Petitioner first contends that the trial court erred when it refused to give the jury two requested instructions: (1) an "accomplice instruction" regarding the testimony of Dana McConnell; and (2) a lesser included offense instruction for voluntary manslaughter.

On habeas review the question is whether the desired jury instruction violated "some right which was guaranteed to the defendant by the Fourteenth Amendment" or "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 146-47 (1973); *See Brinlee v. Crisp,* 608 F.2d 839, 854 (10th Cir. 1979).

### Accomplice Instruction

Dana McConnell, the girlfriend of Terrance Brown, was present at the scene of the murder and was a chief witness against Petitioner at his trial. The Kansas Court of Appeals found that because she was not an accomplice to any of the crimes charged, no accomplice instruction was warranted. Although she was present at the time and place of the crimes and could have been charged with aiding a felon for driving Harris and Brown away

from the crime scene, the Court found the facts failed to show that

McConnell encouraged anyone to commit a crime.

In addressing this issue, the Kansas Court of Appeals applied state law

that "[t]he failure to give an accomplice instruction is not reversible error if

the defendant's guilt is plain, [citation omitted], or if the judge provided

another instruction which cautioned the jury about the weight to be

accorded testimonial evidence. [Citation omitted.]" *State v. Crume,* 271

Kan. 87, 94-95 (2001). The Court found both of these conditions met. *Harris*

*1*, at  3-4.

Specifically, the Court found that another jury instruction sufficiently

cautioned the jury about the weight of testimonial evidence. Instead of an

accomplice instruction, the trial court gave a general credibility instruction,

stating: "It is for you to determine the weight and credit to be given the

testimony of each witness. You have a right to use common knowledge and

experience in regard to the matter about which a witness has testified."

*Harris I*, at 4. The Court of Appeals found this instruction sufficient to enable

the jury to view McConnell's testimony with caution. *Id.*

The Court also found "overwhelming" evidence of Petitioner's guilt,

even without considering McConnell's testimony, stating:

> [T]he evidence of Harris' guilt beyond the McConnell testimony was
> overwhelming, including Harris' confession to police, the victim's blood
> on Harris' shoe and on towels found in his home, his possession of the
> victim's car, and his attempt to cash the victim's check within days of
> the murder.

*Id.*

In light of the evidence presented, even assuming that the requested instruction would have been proper, the Court finds that the trial court's decision not to give the accomplice instruction did not render the trial fundamentally unfair.

## Lesser Included Offense Instruction

The Kansas Court of Appeals also addressed Petitioner's claim that the trial court erred in refusing to give a lesser included offense instruction for voluntary manslaughter. Petitioner contended that the victim's repeated and unwanted homosexual advances provoked him to kill the victim in an act of passion rather than reason. The Court found that the evidence failed to warrant a lesser included offense instruction because it did not suggest any battery or other provocation beyond mere words or gestures sufficient to cause a reasonable belief that Petitioner was in danger of great bodily harm or death, as the law required for voluntary manslaughter. *Harris I*, at 5. *See* KSA § 12-3403(a). The Court additionally found that other evidence "defie[d]" Petitioner's argument that he acted out of passion. *Id.*

This claim provides no basis for habeas corpus relief under federal law, as "[t]he Supreme Court has never recognized a constitutional right to a lesser included offense instruction in a non-capital cases." *Dockins v. Hines,* 374 F.3d 935, 938 (10th Cir. 2004). "[Tenth Circuit] precedents establish a rule of 'automatic non-reviewability' for claims based on a state court's

failure, in a non-capital case, to give a lesser included offense instruction." *Id. (citation omitted).* Federal habeas review is not available for this claim. Alternatively, the trial court's decision did not render the trial fundamentally unfair.

### II. Voluntariness of Petitioner's Confession

Petitioner next contends that his confession to Lieutenant Cosgrove was involuntary and should have been suppressed. Petitioner did not file a motion to suppress this evidence, but the State filed a pretrial motion to find the statements voluntary, which the trial court sustained.

Respondent claims that Petitioner procedurally defaulted this claim before the state courts. Despite the fact that Petitioner raised this issue on appeal, the Kansas Court of Appeals found that Petitioner had failed to preserve the issue for appeal because he had not objected to the introduction at trial of Lieutenant Cosgrove's testimony regarding this issue. *Harris I*, at 6. The Court relied on Kansas law that when an unfavorable ruling on an evidentiary question is received prior to trial, the party must make a timely objection to such evidence when it is introduced at trial in order to preserve the issue for appeal. *See State v. Peckham,* 255 Kan. 310, 327 (1994). Accordingly, the state court invoked a procedural bar.

This court will not review a state habeas petitioner's claims if they were defaulted in state court on independent and adequate state procedural grounds, unless the petitioner can demonstrate cause and prejudice or a

8

fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (2011); *Maples v. Thomas, Commissioner, Alabama Department of Corrections, No. 10–63*, ___ U.S. ___ , 2012 WL 125438 (Jan. 18, 2012).

The contemporaneous objection rule applied by the Kansas Court of Appeals is independent because it relied exclusively on Kansas state law. *See Smith v. Mullin,* 379 F.3d 919, 925 (10th Cir. 2004) ("Independent state procedural grounds are those that rely exclusively on state law as a basis of decision."). The contemporaneous objection rule is adequate as well. Under Tenth Circuit case law, a state procedural rule is considered "adequate" if it is "consistently and evenhandedly … applie[d]" by the state courts at issue. *Id.*; *State v. Mays,* 277 Kan. 359 (2004). The contemporaneous objection rule has been consistently and evenhandedly applied by Kansas Courts. *See e.g.*, *State v. Johnson,* 258 Kan. 61 (1995); *State v. Alford,* 257 Kan. 830 (1995); *State v. Johnson,* 255 Kan. 252 (1994). Accordingly, this claim was defaulted in state court on independent and adequate state procedural grounds. Because Petitioner has not shown cause and actual prejudice, or a fundamental miscarriage of justice, this habeas claim is not subject to review.

Alternatively, the Court of Appeals examined the merits of the issue and found that Petitioner's confession was made voluntarily. The Court considered the totality of the circumstances, including Petitioner's limited education, the length and conditions of his interrogation, and the fairness of

the techniques used during the questioning. *Harris 1*, at 6-7. These were objectively reasonable determinations of the facts relating to the admission of Petitioner's confession. The factors considered by the state court are consistent with those the United States Supreme Court set out in *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973), namely:  (1) defendant's age, intelligence, and education;  (2) the length of the detention;  (3) the length and nature of the questioning;  (4) whether defendant was advised of his constitutional rights;  and (5) whether defendant was subjected to physical punishment. *Id.* Under federal law, as under Kansas law, the determination of voluntariness is based on the totality of the circumstances;  no single factor is determinative. *Id.*

Although this court makes its own determination of the ultimate legal issue of the voluntariness of a confession, *Miller v. Fenton,* 474 U.S. 104, 110, 112 (1985), a state court's underlying factual determination regarding coercion is presumed to be correct.

> A state court's determination of the voluntariness of a confession is not an issue of fact presumed correct under § 2254, but an underlying factual determination that the police did not engage in coercive conduct is presumed correct.

*Johnson v. Zavaras,* 1998 WL 141968, 1 (10th Cir. 1998).

Because the Petitioner had an opportunity in the state court hearing to present evidence as to the voluntariness of his confession, and the facts were adequately developed, this court has no need to conduct its own

evidentiary hearing on the issue in deciding the petition for habeas corpus. *Maxwell v. Turner,* 411 F.2d 805 (10th Cir. 1969).

Petitioner concedes that he was properly informed of his Miranda rights, that he waived his Miranda rights, and that his first statements to police were voluntary. Petitioner contends that his subsequent statement in which he confessed to Lt. Cosgrove that he had shot the victim was coerced because: he had only a ninth grade education; he had been held for nearly 12 hours without being offered food or water; Cosgrove lied in telling him that detectives had gathered enough physical evidence to convict him; Cosgrove told him that if he confessed, the D.A. would look favorably on him; Cosgrove told him that homosexual advances might be an understandable reason to shoot the victim; and Cosgrove told him that if the killing were in self-defense, he wouldn't get in as much trouble. Dk. 2, p. 22-23.

Even assuming that one or more of Cosgrove's statements is false, no grounds for relief have been shown because false statements about incriminating evidence, without more, do not render an otherwise voluntary confession involuntary. *Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir. 1998) (citing cases). The evidence does not rebut the presumption that the police did not engage in coercive conduct. *Johnson,* 1998 WL 141968, 1. This Court, having reviewed the totality of the circumstances, finds that Petitioner's confession was voluntary.

### III.  Admission of Gun and Photographs into Evidence

### Gun

Petitioner contends that the trial court erred in admitting a gun into evidence because it was not shown to be relevant. The gun admitted into evidence was a .38 revolver, but ballistics evidence did not show that it fired the fatal shots. Petitioner therefore contends that the gun was irrelevant. The district court admitted the gun and allowed the jury to give it whatever weight and effect it saw fit.

The Kansas Court of Appeals found that evidence other than ballistics linked the gun to the crime, including testimony that the .38 revolver was the gun Brown possessed, which Petitioner had repeatedly asked to use in committing the robbery of the victim. The testimony was consistent with forensic evidence showing the murder weapon was a .38 caliber revolver. Accordingly, the Court concluded that the gun admitted was not irrelevant, so could be considered along with other evidence in determining whether Petitioner used that particular weapon in the charged crimes.

The State appellate court's determination regarding relevance was reasonable, so Petitioner is not entitled to habeas relief on this issue.

### Photographs

Petitioner additionally claims that the trial court erred in admitting three photographs of the crime scene because they were

irrelevant and unduly prejudicial. Petitioner also claims that the court erroneously admitted one photograph of the victim's autopsy because its relevance was outweighed by its prejudicial effect, as it showed ragged entry wounds in the victim's head.

Because the admission of photographs is generally a matter of state evidentiary law, federal courts on habeas review look only to "whether the admission of the photographs rendered the proceedings fundamentally unfair." *Smallwood v. Gibson,* 191 F.3d 1257, 1275 (10th Cir. 1999). The Court of Appeals found that the challenged photographs were probative as to various issues. Those of the crime scene corroborated McConnell's testimony of the violent nature of the crime, and corroborated police testimony about how the body was found. The photograph of the autopsy showed multiple bullet wounds to the head, shoulder, and chest of the victim. The Court of Appeals found this photograph helped to explain the coroner's medical conclusions about the cause of death and the range and angle from which the shots were fired. Also, the general location of the wounds shown in the photograph corroborated McConnell's account of the shooting and Harris' statements to police. The Court reasonably found that the photographs were relevant.

The Court recognizes the risk of unfair prejudice to Petitioner caused by the admission of gruesome photographs.

> The risk that introducing graphic evidence of brutal murders will give rise to emotional reactions poses a legitimate risk of

unfair prejudice; however, the vicious, brutal nature of a defendant's conduct is not itself sufficient to justify a complete exclusion of evidence tending to show the defendant engaged in those acts. In the guilt phase of a trial, courts have not allowed defendants to benefit from a  Rule 403 exclusion for unfair prejudice simply because their conduct was of a grisly nature. *See, e.g., United States v. Soundingsides,* 820 F.2d 1232, 1242-43 (10th Cir. 1987) (upholding admission of "undeniably gruesome" autopsy photographs that painted a clearer picture of the victim's injuries, cause of her death, and the defendant's malice aforethought) . . .

*United States v. Lujan*, 603 F.3d 850, 858 (10th Cir. 2010).

The Court of Appeals noted that "[g]ruesome crimes result in gruesome photographs," citing *State v. Green,* 274 Kan. 145, 148 (2002), but found that any prejudice was not undue. *Harris 1*, at 11. That ruling was not contrary to or an unreasonable application of Supreme Court precedent, and it is not this Court's task to reweigh the evidence's probative value against its prejudicial effect. Given the probative nature of the photographs and the wealth of additional evidence supporting Petitioner's conviction, this Court concludes that the admission of the photographs was not so unduly prejudicial that it made Petitioner's trial fundamentally unfair. *See generally Torres v. Roberts,* 253 Fed.Appx. 783, 789 (10th Cir. 2007); *Cf, United States v. Sampson,* 486 F.3d 13, 43-44 (1st Cir. 2007) cited in *Lujan*, 603 F.3d at 859. Accordingly, Petitioner is not entitled to relief on this ground.

**IV. Prior Testimony of Unavailable Witness**

Arkeem Hills was an eyewitness to the crime and testified at Petitioner's first trial, but did not appear at petitioner's second trial. The State recounted its efforts to locate him, to serve him with subpoenas, and

to otherwise secure his attendance at trial. Defense counsel claimed that Hills's absence had been caused by the actions or inactions of the prosecution. The trial court declared Hills unavailable and admitted his sworn testimony from Petitioner's first trial. Hills' testimony confirmed McConnell's testimony that Petitioner returned to the crime scene after the killing for the purpose of robbing the victim's body. This claim raises a confrontation clause issue.[1]

The state court placed the burden on the prosecutor to show that Hills could not be produced at trial by the exercise of due diligence and good faith. *Harris I*, at 9. This is consistent with the federal law test for Sixth Amendment unavailability, which requires good-faith efforts by the State. *See Barber v. Page,* 390 U.S. 719, 725 (1968); *Ohio v. Roberts,* 448 U.S. 56 (1980); *Parker v. Jones,* 423 Fed.Appx. 824 (10th Cir. 2011). Under AEDPA, the issue is whether the state-court's finding was reasonable that the prosecution made a diligent, good faith effort to secure the witness's presence at trial.

The Kansas Court of Appeals based its finding of unavailability on the following facts.

---

[1] In *Crawford v. Washington,* 541 U.S. 36, 53–54, 59 (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had … a prior opportunity for cross-examination." Because Petitioner had a prior opportunity to cross-examine Hills at his first trial, the sole issue is Hills' unavailability.

The week prior to Harris' trial, the prosecutor met with Hills to review his testimony from the prior trial. Hills was cooperative and willing to testify. The prosecutor was aware Hills had a warrant out for his arrest for a felony theft from December 2001, and during their discussion, the prosecutor informed Hills of the warrant. At first, Hills denied knowing about it, but he simply bolted out of the prosecutor's office and out of the courthouse. The prosecutor and employees of the prosecutor's office were unable to apprehend Hills. The prosecutor and police employed several means to attempt to locate Hills before trial, including calling him, visiting his home, speaking with Hills' sister twice about trying to persuade Hills to turn himself in, issuing ultimatums to Hills through his sister, speaking with Hills' parents, and distributing a wanted poster to police, but the prosecutor was unable to locate Hills.

At the hearing on Hills' unavailability, the prosecutor argued that due to the warrant, he "wasn't going to let him walk out of there," but did not want to scare Hills away by bringing up the warrant before discussing his testimony. One of the detectives who attempted to find Hills testified on cross-examination that if he tells a suspect or a witness that there is a warrant for their arrest, he expects them to run and prepares for that possibility.

*Harris I*, at 9.

Petitioner contends that the prosecutor should have arrested Hills as soon as Hills entered his office, and should have foreseen that Hills would flee upon learning of the outstanding warrant for his arrest, thus rendering himself unavailable to testify. Petitioner asserts that the prosecutor was culpably negligent, and directly caused the witness to become unavailable by not informing police to arrest Hills, and by not taking other reasonable measures designed to prevent Hills from fleeing.

In addressing this issue, the Court of Appeals applied K.S.A. 60-459(g), which provides that a declarant is not unavailable if the judge finds that his absence is "due to procurement or wrongdoing of the proponent of his or her statement for the purpose of preventing the witness from

16

attending or testifying, or to the culpable neglect of such party." The Court

of Appeals found that the prosecutor had not intentionally procured Hills'

absence, stating:

> Here, the State did not purposefully allow Hills to escape, and the prosecutor had no intent to let Hills "walk out of the office" after their discussion of his testimony. In any event, the State's failure to anticipate Hills' flight, although perhaps negligent, was not a goal-oriented choice as were the government's actions in *Mann.* As the trial court reasoned, it was probably not reasonably foreseeable that a witness would "bolt" in the midst of discussion with the prosecutor.

*Harris I*, at 10, distinguishing *United States v. Mann,* 590 F.2d 361,

367-68 (1st Cir. 1978).

The Court additionally found that even assuming that the

admission of Hills' prior testimony was error, any error was harmless.

> Even if we were to consider the State's failure as culpable neglect, the error is harmless. Hills' prior testimony merely corroborated McConnell's account of Harris' return to the murder scene. The testimony was not of great importance to the State's case or to Harris' defense. The admission of the prior testimony was not inconsistent with substantial justice, did not affect the substantial rights of the defendant, and had little, if any, likelihood of changing the results at trial. Its admission was, therefore, harmless error. See *State v. Hebert,* 277 Kan. 61, 100 (2004).

*Harris 1*, at 10.

Based on the undisputed facts, the Kansas Supreme Court's

determinations that Hickman was unavailable to testify at trial, and that the

prosecutor had not intentionally caused that unavailability, were reasonable.

Although, in hindsight, the prosecutor could have arrested Hills as soon as

he entered his office, and might have taken other precautions to prevent

Hills' flight, the "deferential standard of review set out in § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken." *Hardy,* 132 S.Ct. at 495.

**V. Admission of Burglary**

Petitioner next claims that the trial court erred in admitting evidence pursuant to K.S.A. 60-455 (other bad acts) without giving the jury a limiting instruction. Petitioner was not charged with burglary, but the trial court admitted evidence that Petitioner burglarized the victim's house directly after the killing.

A federal habeas court reviewing a state conviction "will not disturb evidentiary findings regarding the admission of prior offenses, crimes, or bad acts evidence unless the prejudice flowing from such evidence is so great as to constitute a denial of federal constitutional rights by rendering the trial fundamentally unfair." *Smallwood v. Gibson*, 191 F.3d 1257 at 1277. *See Bullock v. Carver,* 297 F.3d 1036, 1055 (10th Cir.), *cert. denied,* 537 U.S. 1093 (2002). Petitioner bears the burden to show that the admission of the challenged evidence or the absence of the desired instruction prejudiced him in such a way as to "infect[] the entire trial." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

Kansas Court of Appeals held that evidence of the burglary was "res gestae" evidence which formed part of the crime as a whole, rather than

an act separate from the crime which required a limiting instruction pursuant

to K.S.A. 60-455. *Harris I*, at 12. Under Kansas law, res gestae includes

"those acts done before, during, or after the happening of the principal

occurrence when those acts are so closely connected with the principal

occurrence as to form, in reality, a part of the occurrence." *Harris 1*, at 12,

citing *State v. Peterson,* 236 Kan. 821, 829 (1985).

Under Kansas law at the time of the Court of Appeals' March 31,

2006 decision, res gestae evidence was independently admissible, and

required no limiting instruction.

> Evidence that has a direct bearing on, and a relation to, the commission of an offense is admissible without a limiting instruction and is not rendered inadmissible because it may disclose other or independent offenses. The law allows the admission of evidence as part of the res gestae of acts made before, during, or after the principal event. *State v. Bowman,* 252 Kan. 883, Syl. ¶¶ 2, 5, 850 P.2d 236 (1993). If the evidence is a part of the res gestae of the offenses for which a defendant is being tried, such evidence may be introduced independent of K.S.A. 60–455. *State v. Gilder,* 223 Kan. 220, 228, 574 P.2d 196 (1977).
> Acts done or declarations made before, during or after the happening of the principal fact may be admissible as part of the res gestae where they are so closely connected with it as to form in reality a part of the occurrence. Evidence that does not constitute a portion of the crimes charged is admissible if there are some natural, necessary, or logical connections between the evidence and the inference or result which it is designed to establish. *State v. Davis,* 236 Kan. 538, 539, 694 P.2d 418 (1985).

*State v. Baker*, 255 Kan. 680, 687 (1994).[2]

---

[2] Later in 2006, the Kansas Supreme Court abrogated the rule stated in *Baker* by holding that res gestae is no longer an independent basis for admission of evidence. *State v. Gunby*, 282 Kan. 39 (Oct. 27, 2006).

In analyzing this issue, the Kansas Court of Appeals noted the following evidence: from the beginning, Petitioner planned to lure the victim away from his residence for the purpose of robbery and to burglarize his residence; the burglary of the victim's home followed directly after his murder; and, the burglary was facilitated by the use of the victim's keys, which Petitioner had taken when he stole the victim's car after he shot the victim. The Court of Appeals upheld the admission of evidence of the burglary as res gestae evidence because "it was part of the overall occurrence of events that night, had a natural and logical connection to the crimes charged, and was relevant to the issue of Harris' involvement." *Harris I*, at 12. These findings of fact are accorded a presumption of correctness on federal habeas review, and have not been rebutted with clear and convincing evidence.

This Court finds that the Court of Appeals' admission of this evidence as res gestae evidence did not render Petitioner's trial fundamentally unfair, nor was it based on an unreasonable determination of the facts or federal law existing at the time of the last state-court adjudication on the merits of Petitioner's claims.

## VI.  Information

### Pretrial Amendment of Information

Approximately one month before trial, the trial court permitted the State to amend the information by adding a new charge of criminal

possession of a firearm. One week prior to trial, a preliminary hearing was held on this added charge. Petitioner did not request a continuance of the trial, but now generally contends that this late amendment deprived him of the notice necessary to enable him to present a defense to that charge or to incorporate the new issue into his defense strategy.

On direct appeal, the Kansas Court of Appeals found no prejudice. *Harris I*, at 13. It noted that the same evidence supporting Petitioner's defense to the other charges – a general denial - applied equally to the newer charge of criminal possession of a firearm, and that the same evidence incriminating Petitioner in the killing of the victim established the elements of the firearm charge. *Id.* at 12.

Petitioner makes conclusory allegations of prejudice, and contends that

the addition of the gun charge led the trial court to admit Petitioner's "past criminal history in trial as evidence." Doc. 19, p. 23. The record reflects that the jury was instructed that to find Petitioner guilty of the charge of criminal possession of a firearm, they had to find, among other elements, that "the defendant within 10 years preceding such possession had been convicted of a felony." (Instr. No. 13.) The jury was also instructed that the parties had stipulated that defendant was convicted of a felony in 1996, and that the jury should consider that fact to be true. Inst. No 14. The record reflects that Petitioner was a juvenile in 1996 when he pled guilty to

two counts of aggravated battery, Severity Level 8 person felonies. R. XVI, p. 20-21.

The Supreme Court has held that "elementary principles of due process require that an accused be informed of the specific charge against him." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948). Reasonable notice "sufficiently apprises the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962). The pretrial hearing gave ample notice to Petitioner of the charges he was facing and afforded him opportunity to defend against those charges. The amendment of the information nearly one month prior to trial was largely one of form, since it relied upon the same prosecutorial facts as did the other charges.

Further, Petitioner's allegations do not demonstrate that he suffered any actual prejudice as a result of the alleged lack of notice, since his original theory of defense and the evidence in support of it was unchanged by addition of the new charge. That the jury was made aware of Petitioner's prior felony by virtue of Petitioner's stipulation does not meet Petitioner's heavy burden of showing actual prejudice. See *United States v. Valentine,* 706 F.2d 282, 290 (10th Cir. 1983); *U.S. v. Cornelio-Legarda*, 381 Fed.Appx. 835, 843 (10th Cir. 2010). The information about Petitioner's criminal background was limited, and nothing about the stipulated fact suggested to the jury it should decide the case on any basis other than the facts adduced at trial and the law as set out in the trial court's instructions.

See *Ochoa v. Workman*, ___ F3d ___ , 2012 WL 130718, at *11 (10th Cir.

Jan. 18, 2012). Because neither the amendment of the information nor the

admission of the fact of Petitioner's prior felony rendered Petitioner's trial

fundamentally unfair, Petitioner is not entitled to habeas relief.

### Defective Information - Jurisdiction

Petitioner additionally claims that the amended information was

fatally defective for lack of jurisdiction because it failed to comply with the

state's verification requirements. Petitioner raised this issue in his 60-1507

motion. The Court of Appeals found that lack of verification on an

information is not a jurisdictional defect, citing *State v. Graham,* 247 Kan.

388, 395 (1990) and *State v. Fraker,* 242 Kan. 466, 467–68 (1988), and

that Petitioner's objection was untimely since it was not raised before trial so

was waived as a matter of law. *Harris II*, at 3. The Court of Appeals

reasonably concluded that the lack of verification did not create a

jurisdictional defect and that the Petitioner waived any objection to that

defect. That decision did not contravene clearly established federal law. *See*

Fed. Rule. Crim. Pro. 12(b)(3)(B); *Davis v. U.S.*, 411 U.S. 233, 242 (1973).

On habeas review, this Court considers only whether the

charging document was so fatally defective that it deprived the court of

jurisdiction.

> In a proceeding of this kind the question is not whether the
> indictment was vulnerable to direct attack by demurrer or
> motion in the criminal case, but whether it was so fatally
> defective that it deprived the court of jurisdiction. If it attempted

23

> to charge the essential elements of a penal offense of which the court had jurisdiction, its technical sufficiency is not open to challenge in habeas corpus. (Citations omitted.).

*Dalton v. Hunter*, 174 F.2d 633, 635 (10th Cir. 1949). Here, the information charged the essential elements of a penal offense of which the court had jurisdiction. Any lack of verification is a technical insufficiency which cannot be challenged in these proceedings.

## VII.  Disproportionate Sentences

### Cruel and Unusual Punishment

Petitioner next contends that his sentence for second-degree murder constitutes cruel and unusual punishment because it is longer than his sentence would have been for first-degree murder, and is thus disproportionate. Petitioner contends that his sentence of 620 months imprisonment (over 51 years), even assuming 15% good time credit, requires him to serve a minimum of approximately 44 years. But if Petitioner had been convicted of first-degree murder and sentenced to life imprisonment, Petitioner believes he would have had the possibility of parole after twenty-five years. Petitioner additionally contends that his due process right to a jury trial was unconstitutionally inhibited because he had to choose between pleading to first-degree murder (which he denied doing) and its opportunity for parole after 25 years, or taking his case to a jury and risk serving a minimum of approximately 44 years if convicted of second-degree intentional murder.

24

The Kansas Court of Appeals on direct appeal found that it lacked jurisdiction to reach Petitioner's constitutional challenge to his presumptive sentence, citing K.S.A. 21-4721(c)(1), That statute prohibits the appellate court from reviewing any sentence that is within the presumptive sentence for the crime of conviction. *Harris 1*, at 13. Petitioner did not include this issue in his appeal from his 60-1507 motion.

Petitioner erroneously relies on the proportionality theory to compare the sentences for two separate crimes. That theory compares only the sentence to the crime which gave rise to that sentence. *See Ewing v. California*, 538 U.S. 11, 20 (2003). The Eighth Amendment's proportionality principle is narrow, and does not require strict proportionality between the crime and its sentence, but rather forbids only extreme sentences that are 'grossly disproportionate' to the crime. *Graham v. Florida*, ___ U.S. ___, 130 S.Ct. 2011 (2010). Here, no contention is made that Petitioner's sentence for second-degree murder is grossly disproportionate to that offense.

But if one were to compare the sentences between the two crimes, as Petitioner urges, the Court would have to compare the actual sentences of imprisonment – 620 months for second-degree intentional murder, and life for first-degree murder– rather than the mere possibility of parole, which may or may not be given to one serving a life sentence. Given Petitioner's youth, 620 months is likely less than a life sentence would have

been. This is the only comparison which is not speculative, since parole is not automatically given to lifers after 25 years or at any fixed point.

Further, had Petitioner been convicted of first-degree murder, it is not certain that he would have been eligible for parole after 25 years, given the statements made by the sentencing judge in denying Petitioner's motion for a durational departure. The judge stated that had Petitioner been convicted of first-degree murder, Petitioner's motive for financial gain might have warranted the imposition of a "hard 50" sentence, for which the Petitioner would not have had the possibility of parole until after serving 50 years. *See* R. XVI, p. 55. Speculation cuts both ways.

Generally, a sentence within statutory limits does not violate the Eighth Amendment. *See United States v. Delacruz-Soto,* 414 F.3d 1158, 1168 (10th Cir. 2005) (citation omitted). Petitioner has not shown that his sentence was outside the statutory limits or that it otherwise violated the Eighth Amendment's prohibition against cruel and unusual punishment.

## VIII.  Prior Criminal Convictions

The Court next addresses Petitioner's claim that the trial court erred in using his prior criminal conviction not only as an element in his conviction for criminal possession of a firearm, but also as criminal history to enhance his base offense level for sentencing.

**Double Counting**

Petitioner contends that the sentencing court erred in including the prior felony in his criminal history score because an element of a crime of conviction cannot also be used as criminal history. Petitioner relies on KSA § 21-4710(d)(11), which provided: "Prior convictions of any crime shall not be counted in determining the criminal history category if they … are elements of the present crime of conviction. …"

The Kansas Court of Appeals noted Petitioner's concession that this issue is controlled by Kansas law which Petitioner believes is wrongly decided. *Harris 1*, at 13. In *State v. Vontress,* 266 Kan. 248, 260 (1998), the Kansas Supreme Court found that the exclusion noted above in (d)(11) does not apply where the prior felony does not provide an element of the offense or in some manner affect the penalty applicable to the conviction of the primary crime. In cases of multiple convictions arising out of the same complaint, the "present crime of conviction," as that phrase is used in the statute above, is the defendant's primary crime, *i.e.,* the crime with the highest severity level. *Vontress* found no error where a prior felony conviction was used as an element of a status crime (criminal possession of a firearm) and was also counted for criminal history in calculating defendant's sentence on his primary crime (aggravated robbery).

The same rationale would apply here if the merits were reached. But this issue is merely a question of state law, which the state courts

27

decided on state law grounds, and does not present a claim cognizable on federal habeas review. *See Estelle,* 502 U.S. at 67–68.

## Apprendi

Petitioner additionally claims that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), was wrongly decided. *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Petitioner urges this Court to ignore the prior conviction exception written into the rule. He contends that in order to increase his sentence beyond his statutory maximum sentence, the jury should have been required to find the fact of his prior convictions, including his juvenile convictions. This Court is, of course, bound by the clearly-established holding of *Apprendi,* which defeats Petitioner's claim.

## Prior Juvenile Adjudications

Petitioner also contends that using his juvenile adjudications to enhance his sentence violated the Constitution, again relying on *Apprendi.* Petitioner asserts that juvenile adjudications do not fall within *Apprendi's* stated exception for "prior convictions."

The Kansas Supreme Court has previously held that the state court's use of prior juvenile adjudications to enhance one's Kansas sentence does not violate *Apprendi. State v. Hitt,* 273 Kan. 224, 236 (2002), *cert.*

*denied* 537 U.S. 1104 (2003) (finding "[j]uvenile adjudications are included within the historical cloak of recidivism" and are not required to be charged in an indictment or proven to a jury beyond a reasonable doubt before they can be used in calculating a defendant's criminal history score); *State v. Fischer,* 288 Kan. 470, Syl. ¶ 3(2009) (reaffirming *Hitt* for all juvenile adjudications that were final as of the decision in *In re L. M.,* 286 Kan. 460, 469–70 (2008), which gave juveniles a constitutional right to a jury trial); *Jones v. Roberts*, 2006 WL 2989237, 5 (D.Kan. 2006). *See also State v. Hollis,* 2011 WL 2637441, 6 (Kan.App. 2011).

  The Tenth Circuit has not yet decided whether juvenile proceedings count as "prior convictions" for purposes of *Apprendi's* application. *Gardner v. McKune*, 242 Fed.Appx. 594, 598, 2007 WL 2204352, 3 (10th Cir. 2007). But it has held that even if *Apprendi* bars admission of juvenile convictions in sentencing, given the narrow standard of review in habeas cases, Kansas' use of a defendant's prior juvenile conviction is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *Id. See also Jones v. Roberts,* No. 06-3100-SAC, 2006 WL 2989237, at *5 (D.Kan. Oct. 19, 2006); *Hernandez v. Bruce,* No. 05-3237-JAR, 2006 WL 314352, at *3-4 (D.Kan. Jan. 26, 2006). Accordingly, Petitioner's request for habeas relief on this ground is denied.

## IX.  Effective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective in failing to properly investigate and develop the testimony of two witnesses whom Petitioner believes would have supported his theory of defense. Specifically, Petitioner claims he gave his trial counsel the names of two witnesses, but counsel failed to lock witnesses into their testimony by obtaining written statements or by conducting interviews in the presence of a hired investigator. Petitioner contends that Carrie Matthews would have testified that that Brown, and not Petitioner, was the shooter; and that Pierre Harris, his brother, would have testified that Brown told him before the shooting that he intended to shoot the victim, and that Brown told him after the shooting that he had shot the victim.

The state district court conducted an evidentiary hearing, then denied relief on Petitioner's post-conviction motion alleging ineffective assistance of counsel. The court found that counsel's decision not to call either of these witnesses was a strategic decision which would not be disturbed. The Kansas Court of Appeals affirmed that decision by applying the two-prong test enunciated in *Strickland v. Washington,* 466 U.S. 668, 687(1984), noting that trial counsel had conducted an investigation and determined that calling the two to testify presented significant risks to Petitioner's case. It specifically noted the following evidence supporting that finding:

Counsel stated that she spoke with Matthews a number of times and interviewed Pierre on two separate occasions. She testified at length that Matthews was unreliable and that Pierre did not offer anything concrete. She testified that after her investigation of the two, she did not believe that either would have provided testimony that would have been helpful to Harris' case, so she made the strategic decision not to secure their presence at Harris' trial.

*Harris II*, p. 2.

Petitioner's contention that counsel lacked sufficient information to make a strategic decision on the issue due to her inadequate investigation fails to meet his burden under *Strickland*. To obtain habeas relief, a petitioner must establish that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 694 (1984); *Le v. Mullin,* 311 F.3d 1002, 1024–25 (10th Cir. 2002), *cert. denied,* 540 U.S. 833 (2003). In evaluating counsel's performance, the court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance…." *Strickland,* 466 U.S. at 689; *Boyd v. Ward,* 179 F.3d 904, 914 (10th Cir. 1999), *cert. denied,* 528 U.S. 1167 (2000). "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Strickland,* 466 U.S. at 689.

Having carefully reviewed the record, the court finds the state appellate court's determination that petitioner's trial counsel performed in a constitutionally sufficient manner is fully consistent with, and a reasonable

application of, the constitutional standard in *Strickland.* Petitioner is thus entitled to no relief on this claim.

### X.  Cumulative Error

Petitioner alleges that the cumulative effect of the errors at trial deprived him of his constitutional right to a fair trial.

The Tenth Circuit recognizes the possibility of cumulative error analysis in federal habeas proceedings.

> In the federal habeas context, " '[a] cumulative-error analysis aggregates all [constitutional] errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.' " *Brown v. Sirmons,* 515 F.3d 1072, 1097 (10th Cir. 2008) (quoting *United States v. Toles,* 297 F.3d 959, 972 (10th Cir. 2002)).

*Alverson v. Workman*, 595 F.3d 1142, 1162 (10th Cir. 2010). Here, however, because the court has rejected each of Petitioner's substantive claims of constitutional error, there can be no cumulative error. *See U.S. v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) (holding a cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors).

Finding no error of constitutional significance, and finding the state courts' resolution of Petitioner's claims on the merits was not contrary to or an unreasonable application of clearly established federal law as decided by the United States Supreme Court, the court denies petitioner's application for habeas corpus relief under 28 U.S.C. § 2254.

**Evidentiary hearing**

The court finds no need for an evidentiary hearing. "[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record." *Anderson v. Attorney Gen. of Kansas,* 425 F.3d 853, 859 (10th Cir. 2005); *see Schriro v. Landrigan,* 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). The court finds that the record in this case refutes Petitioner's allegations and otherwise precludes habeas relief.

**Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). *See United States v. Bedford,* 628 F.3d 1232 (10th Cir. 2010).

When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a

COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. Neither of these standards is met here. For the reasons stated above, Petitioner has not made a substantial showing of the denial of a constitutional right. The court therefore denies a certificate of appealability.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus is denied.

Dated this 2nd day of February, 2012, at Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge